# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**JEFFREY SMITH,**

           **Plaintiff,**

         **v.**                                         **Case No. 18-CV-1793**

**ENTERPRISE RENT-A-CAR COMPANY OF WISCONSIN, LLC,**

           **Defendant.**

## DECISION AND ORDER

### INTRODUCTION

Plaintiff Jeffrey Smith filed this action against defendant Enterprise Rent-A-Car Company of Wisconsin, LLC, alleging violations of Title VII of the Civil Rights Act of 1964. (ECF No. 16.) Enterprise moves for partial dismissal of Smith's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. (ECF No. 17.) It asks the court to "narrow the scope of this action to [Smith's] timely claims related to his access to the Internet at work and pay, and for which he exhausted his administrative remedies[.]" (ECF No. 18 at 2.) All parties have

consented to the full jurisdiction of a magistrate judge. (ECF Nos. 3, 12.) Enterprise's motion is ready for resolution.

## BACKGROUND

Smith is African American. (ECF No. 16, ¶ 7.) On or about October 16, 2016, he began working for Enterprise as a maintenance technician at Enterprise's Milwaukee Airport location, where he remains employed. (*Id.*, ¶¶ 4-5.) As a maintenance technician, his job duties include changing tires and performing oil changes on rental cars. (*Id.*, ¶ 4.) He received a starting wage of $12.50 per hour. (*Id.*, ¶ 17(a).)

Unbeknownst to Smith, on numerous occasions Smith's direct supervisor, Scott Shultz,[1] referred to Smith and Smith's African American co-worker, Walter Viverette, as "monkeys." (ECF No. 16, ¶¶ 9-10.) Austin Teas, a supervisor at Enterprise, reported Shultz's use of racial slurs (although the amended complaint does not state when or to who Teas reported such use). (*Id.*, ¶ 12.) Matt Wakefield, another co-worker of Smith's, verified Shultz's use of the racial slurs. (*Id.*, ¶ 13.) Enterprise terminated Schultz's employment on or about October 12, 2017, and it was not until sometime thereafter that Smith learned of Shultz's use of the racial comments. (*Id.*, ¶¶ 14, 24.)

---

[1] Smith refers to his former supervisor as "Scott Shultz" in his amended complaint and as "Scott Schultz" in his brief opposing Enterprise's motion to dismiss. For the sake of uniformity, the court will refer to him as "Scott Shultz."

Approximately six months later, on April 15, 2018, Smith filed a charge of discrimination with the Wisconsin Equal Rights Division and the United States Equal Employment Opportunity Commission (EEOC), alleging:

> I began working for [Enterprise] as a Maintenance Technician in October 2016. I was performing duties of Service Manager and Master Technician but not receiving the pay. I have spoken to [Enterprise] about my pay, but they have taken no corrective action. I further have been denied full access to the internet which I need to do my job. I believe [Enterprise] is discriminating against me because of my race (Black) in violation of Title VII of the Civil Rights Act of 1964, as amended.

(ECF No. 16-2.) On or about September 5, 2018, Smith received a "Dismissal and Notice of Rights" letter from the EEOC, which stated in pertinent part:

> Based on its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that [Enterprise] is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.
>
> …
>
> You may file a lawsuit against [Enterprise] under federal law based on this charge in federal or state court. Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost.

(ECF No. 16-1.) (Emphasis in original.)

On November 12, 2018, Smith filed his complaint in this case (ECF No. 1), which he amended on February 16, 2019 (ECF No. 16). He seeks, in part, "[a] finding that the Title VII of the 1964 Civil Rights Act, as amended, was violated due to discrimination

3

based on race and failure to allow [him] full use of the internet to perform his job, wages and hostile working conditions." (ECF No. 16 at 7.)

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim satisfies this pleading standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. The court accepts "all well-pleaded facts as true and constru[es] all inferences in favor of the plaintiff[]." *Gruber v. Creditors' Prot. Serv.*, 742 F.3d 271, 274 (7th Cir. 2014).

## ANALYSIS

Before filing suit under Title VII, an employee must exhaust his administrative remedies by (1) filing a timely charge of discrimination with the EEOC, and (2) receiving a right-to-sue letter from the EEOC. 42 U.S.C. §§ 2000e-5(e)(1), 2000e-5(f)(1); *see Reynolds v. Tangherlini*, 737 F.3d 1093, 1099 (7th Cir. 2013). "As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in [his] EEOC charge." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994) (citing *Alexander v. Gardner-Denver Co.*,

415 U.S. 36, 47 (1974)). "The purpose of this requirement is twofold: to promote resolution of the dispute by settlement or conciliation and to ensure that the sued employers receive adequate notice of the charges against them." *Teal v. Potter*, 559 F.3d 687, 691 (7th Cir. 2009). "An aggrieved employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination." *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992). Enterprise contends that Smith failed to exhaust his administrative remedies with respect to his hostile work environment claim because it goes beyond the scope of the charge he filed with the EEOC. (ECF No. 18 at 6-9.)

"[B]ecause most EEOC charges are completed by laypersons rather than by lawyers, a Title VII plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in [his] complaint." *Cheek*, 31 F.3d at 500 (citing *Taylor v. W. & S. Life Ins. Co.*, 966 F.2d 1188, 1195 (7th Cir. 1992)). As such, a Title VII plaintiff may pursue claims that are "'like or reasonably related to the allegations of the [administrative] charge and growing out of such allegations." *Id.* (quoting *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976)). "[I]n order for claims to be deemed related, 'the EEOC charge and the complaint must, at a minimum, describe the *same conduct* and implicate the *same individuals*." *Teal*, 559 F.3d at 692 (quoting *Cheek*, 31 F.3d at 500) (emphasis in original). "When an EEOC charge alleges a particular theory of discrimination, allegations of a different type of discrimination in a subsequent complaint

5

are not reasonably related to them unless the allegations in the complaint can be reasonably inferred from the facts alleged in the charge." *Cheek*, 31 F.3d at 503.

In the administrative charge he filed with the EEOC, Smith complained of racial discrimination with respect to his wages and internet access. (ECF No. 16-2.) In his amended complaint Smith also alleges that Shultz's racial comments, which he acknowledges were "not alleged in the EEOC complaint" (ECF No. 16, ¶ 11), "created a hostile work environment." (ECF No. 16, ¶¶ 11, 15.)

> [T]he racist atmosphere included, but was not limited to, the following discriminatory acts …:
>
> a. That even though [Smith] was highly trained and had great experience in the field of auto repair and maintenance, he received starting pay of only $12.50 per hour, when it should have been a minimum of $4 more as nationwide the comparable pay was $17 to $24 per hour;
> b. That notwithstanding the $12.50 rate of pay, he was required and forced to train an inexperienced worker, Walter Viverette, while earning the same salary as said co-worker;
> c. That supervisor Scott Shultz, in the course of his employment, promised a review and increase in pay to $16.50 per hour within six months, and another review in one year, which was not done based upon the racist statements and attitude towards [Smith]; and he only received an increase to $14.50 per hour after ten (10) months;
> d. The acts of discrimination also applied to his salary that was not raised to $16.50 until May of 2018, when other individuals of the same or similar position, who were Caucasian, starting pay as a maintenance [technician] was $14.50;
> e. That [Smith] was hired to work Monday through Friday, but supervisor Scott Shultz assigned [Smith] to work some Saturdays, contrary to the employment agreement, and based upon said Scott Shultz's racist attitudes towards [Smith];
> f. That [Smith] was also assigned additional work by said Scott Shultz, and other supervisors in the course of their employments, that

|     | included checking engine lights, checking light bulbs, and handling recalls, a job held by Caucasian Matthew Horerger, although said individual was certified in the field; |
| --- | --- |
| g.  | Upon information and belief, [Enterprise] retaliated against Matthew Wakefield and Austin Teas after both disclosed the racial attitudes and remarks of supervisor Scott Shultz; |
| h.  | That [Smith] was required to train other individuals, and perform additional trainer functions, without any increase in salary and/or without being paid what was paid to Caucasian employees similarly situated in the company nationwide; |
| i.  | That [Smith] was denied full access to the use of the internet because he was African-American; he needed full use to complete his job; and these same rights were not denied other Caucasian workers. |

(*Id.*, ¶ 17.) Smith argues "[t]hat the EEOC complaint is broad enough to encompass a hostile work environment[.]" (ECF No. 20 at 2.)

The Court of Appeals for the Seventh Circuit has held that "it will not suffice to file general charges with the EEOC … and then [] expect that [the] allegation will permit all claims of race-based discrimination in a subsequent lawsuit." *Rush*, 966 F.2d at 1112. Some detail, beyond a broad statement that, "I believe [Enterprise] is discriminating against me because of my race (Black)" (ECF No. 16-2), is necessary to allow the EEOC to perform its statutory duty. *Id.* at 1110 ("[T]he goals behind the requirement of prior resort to administrative relief would be frustrated if the filing of a general charge with the EEOC would open up the possibility to judicial challenges to any related conduct that took place in connection with the employment relationship."). Since Smith's EEOC charge contained no reference to his work environment other than being denied "full" access to the internet (whatever that means), his hostile work environment claim falls outside of its scope. *See*

7

*Recker v. Jewel Food Stores, Inc.*, No. 03 C 995, 2003 WL 22071496, at *3 (N.D. Ill. Sept. 3, 2003) ("When the charge includes no statements related to the plaintiff's work performance or work environment, a hostile work environment claim is outside the scope of the underlying EEOC charge of racial discrimination."). As such, the court will dismiss Smith's hostile work environment claim as unexhausted. *See Perry v. Scaible*, No. 07-C-767, 2008 WL 2324641, at *2 (E.D. Wis. June 5, 2008) ("[T]he Seventh Circuit Court of Appeals treats failure to exhaust administrative remedies as properly raised under Rule 12(b)(6)[.]").

Enterprise also contends that several "claims" in paragraph 17 of Smith's amended complaint are either unexhausted or time-barred:

> The discrete pay decision that [Smith] alleges occurred in May 2018 [(ECF No. 16, ¶ 17(d)] … is not within the scope of the EEOC Charge. [(*See* ECF No. 18 at 9-10.)]
>
> The allegations about the following working conditions … are not like or reasonably related to the claims asserted in the EEOC Charge and [] also do not rise to the level of a materially adverse employment action under Title VII: (1) assignment of training duties for co-workers [(ECF No. 16, ¶¶ 17(b),(h))], (2) timing and occurrence of employment reviews [(*id.*, ¶ 17(c))], and (3) assignment of work outside of [Smith's] normal work schedule and job duties [(*id.*, ¶¶ 17(e)-(f))]. [(*See* ECF No. 18 at 10-11, 15-16.)]
>
> The discrete pay decision that [Smith] alleges occurred at the time of his hire in October 2016 [(ECF No. 16, ¶ 17(a))] … is barred by the statute of limitations for a Title VII claim. [(*See* ECF No. 18 at 11-12.)]
>
> The compensation decision that occurred when [Smith] reached his six-month employment anniversary in April 2017 [(ECF No. 16, ¶ 17(c))] … is also barred by the statute of limitations. [(*See* ECF No. 18 at 11-12].

(ECF No. 22 at 7.) However, the allegations in paragraph 17 of Smith's amended complaint are not separate claims but rather facts in support of Smith's hostile work environment claim, which the court has already determined must be dismissed as unexhausted. To the extent Enterprise seeks to narrow the scope of Smith's wage discrimination claim, the court is unable to dismiss parts of Smith's claim on a motion to dismiss. *See BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) ("A motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissal of *parts* of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief.") (emphasis in original).

**IT IS THEREFORE ORDERED** that Enterprise's motion for partial dismissal of Smith's amended complaint (ECF No. 17) is **granted,** and Smith's hostile work environment claim is **dismissed**.

Dated at Milwaukee, Wisconsin this 21st day of May, 2019.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge